UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM J. MELE,

        Plaintiff,

-against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

        Defendant.

No. 04 Civ. 03661 (LTS)(THK)



LAURA TAYLOR SWAIN, United States District Judge

MEMORANDUM OPINION & ORDER

        On May 13, 2004, Plaintiff William J. Mele ("Plaintiff" or "Mele") commenced this personal injury action against the Metropolitan Transportation Authority ("Defendant" or "MTA") pursuant to the Federal Employers' Liability Act (the "FELA"), 41 U.S.C. § 52, et seq., seeking to recover damages for injuries he suffered when he slipped and fell in an MTA facility. Plaintiff alleges that the accident was the result of the MTA's negligence and failure to provide him with a reasonably safe workplace. Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on two grounds: (1) that the Plaintiff fails to provide sufficient evidence to establish that the MTA had prior notice of the hazardous wet condition that caused him to slip, and (2) that the cleaning crew responsible for maintaining the lobby was not an "agent" of the MTA within the meaning of the FELA. The Court has considered thoroughly all of the parties' submissions and arguments, and has jurisdiction of this action under 28 U.S.C. § 1331. For the reasons set forth below, Defendant's motion for

Copies mailed to All Counsel of Record
Chambers of Judge Swain 8-4-06

summary judgment is denied.

## BACKGROUND

The following facts are undisputed unless characterized otherwise. Plaintiff claims he was injured on December 20, 2002, when he allegedly slipped and fell in the lobby of the MTA's corporate headquarters at 347 Madison Avenue, New York, NY ("347 Madison Avenue"). (Def.'s S.D.N.Y. Local Civil Rule 56.1 Statement ("Def.'s 56.1 Stmt.") ¶¶ 1,5; Def.'s Notice of Mot. for Summ. J. ("Def.'s Notice of Mot."), Ex. D ("Mele Dep.") at 111, 128-30.[1]) At the time of his injury, Plaintiff was employed by the MTA Police Department as Assistant Deputy Chief of Operations Support. (Mele Dep. 57:17-18; Def.'s 56.1 Stmt. ¶ 2.)

Heavy rain was falling on the morning of the accident. (Mele Dep. 85:5; Def.'s 56.1 Stmt. ¶ 3.) At approximately 9:00 a.m., Plaintiff left his office in the 345 Madison Avenue MTA building to attend a meeting on the fifth floor of 347 Madison Avenue. (Mele Dep. 88-89, 92, 94; Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 4.) Plaintiff testified that he then headed back to his office to retrieve additional paperwork at 10:30 a.m. (Mele Dep. 107-10.) While on the way back to his office, Plaintiff slipped and fell in the lobby of 347 Madison Avenue. (Id. at 111-12; Def.'s Mem., 5.)

Plaintiff alleges that the wet area upon which he slipped and fell was approximately four feet by four feet in size (twelve feet circumference) and that the water in the

---

[1] Plaintiff failed to file and serve a statement responding to the contentions in Defendant's Rule 56.1 statement, as required by Local Civil Rule 56.1; Defendant's factual assertions in that statement are, accordingly, treated as admitted for purposes of this motion practice. S.D.N.Y. Local Civil Rule 56.1(c).

wet area was mixed with dirt and grime. (Mele Dep. at 119, 121-22.) Mele did not observe the wet condition on which he slipped at any time prior to the accident. (Def.'s 56.1 Stmt. ¶ 5.) Mele asserts that the wet substance was tracked-in rain water. (Mele Dep. 119:17-19.) Carpeted runners or mats had been placed on the floor near the main entrance of 347 Madison Avenue on the date of the accident. (Def.'s 56.1 Stmt. ¶ 4.) Plaintiff contends, however, that only half the number of mats ordinarily placed in the lobby on rainy days had been put out, and that the area in which he fell was normally covered with mats in inclement weather. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., 8.) Plaintiff alleges that approximately half an hour after his fall, he observed additional mats placed in the area where he had slipped. (Mele Dep. 149-51.) Plaintiff also alleges that the MTA Building Manager, Gary Weissbard, apologized to him after the accident and admitted that he had instructed the cleaning crew to put down mats in the area where Plaintiff slipped and fell prior to the accident. (Id. at 146-47.) The cleaning crew responsible for maintaining the lobby were provided by OneSource Facility Services, Inc. ("OneSource"), pursuant to a written contract with the MTA. (Def.'s 56.1 Stmt. ¶ 8; see Def.'s Notice of Mot., Ex. F.)

## DISCUSSION

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986). When considering a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir. 1993). The role of the court is issue-finding, and not issue-resolution. Id. However, "the mere existence of some alleged factual dispute between the parties" alone is insufficient to defeat a properly supported summary judgment motion; the dispute must be genuine. Anderson, 477 U.S. at 247-48 (emphasis in original). There is a genuine dispute of material fact only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

FELA

Plaintiff brings this action under the FELA, which provides, in relevant part, that "[every] common carrier by Railroad . . . shall be liable for damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C.A. § 51 (West 2006). To recover damages under the FELA, a plaintiff must show that,

> (1) the defendant is a railroad engaged in interstate commerce; (2) the plaintiff was an employee of the defendant in interstate commerce, acting in the course of his employment; (3) the defendant or one of its employees or agents was negligent; and (4) such negligence played a part, no matter how slight, in bringing about an injury to the plaintiff.

Mueller v. Long Island R.R. Co., No. 89 Civ. 7384(CSH), 1999 WL 1201747, at *3 (S.D.N.Y. Dec. 14, 1999) (citation omitted).

The MTA operates as an interstate common carrier within the meaning of the

FELA. Greene v. Long Island R.R. Co., 280 F.3d 224, 240 (2d Cir. 2002). It is undisputed that Plaintiff Mele was an employee of the MTA at the time of the accident and the MTA does not contest, in the context of this motion practice, that Mele was injured while acting in the course of his employment. The MTA argues on this motion, however, that Plaintiff cannot meet his burden as to the third and fourth elements of his FELA cause of action. The MTA contends that there is insufficient evidence to support a determination that it had actual or constructive notice of the wet condition upon which Plaintiff slipped, and that Plaintiff therefore is unable to prove negligence. The MTA also argues that it is entitled to summary judgment because the duty of remedying the alleged wet condition on the lobby floor had been assumed by independent contractors in charge of cleaning services who were not "agents" of the MTA, and that any negligence on their part may not be imputed to the MTA.

*Notice*

Under the FELA, common carriers have an ongoing duty to provide a safe workplace, and an employer breaches this duty "when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." Gallose v. Long Island R.R. Co., 878 F.2d 80, 84-85 (2d Cir. 1989). The employer must have actual or constructive notice of the potential hazard to trigger this duty. Id. at 85. Although the FELA is not a strict liability statute, in Williams v. Long Island R.R. Co., 196 F.3d 402, 406 (2d Cir. 1999), the Second Circuit "construed the statute, in light of its broad remedial nature, as creating a relaxed standard for negligence." Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 n.1 (2d Cir. 1996). Although the plaintiff must still prove the traditional common law elements of negligence – duty, breach, foreseeability, and causation – "the plaintiff's burden

in making a showing of . . . negligence is lighter under FELA than it would be at common law." Tufariello v. Long Island R.R. Co., No. 05-1945-CV(CLP), __ F.3d __, 2006 WL 2068296, at *5 (2d Cir. July 20, 2006). Under the FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957). Circumstantial evidence from which a jury may make a reasonable inference of negligence is sufficient to trigger an obligation to pay damages under the FELA. Id. at 508.

Sufficient circumstantial evidence to support an inference of constructive notice for FELA liability purposes has been found where an employee slipped and fell in a puddle near a railroad concession stand. See Herbert v. Nat'l R.R. Passenger Corp., No. 92 Civ. 6937 (MBM), 1995 WL 507289, at *2 (S.D.N.Y. Aug. 28, 1995). In denying the employer's motion for summary judgment, the court held that a jury could reasonably infer that "a puddle with a six-foot circumference was obvious, and existed long enough to impart constructive notice because the nearby accumulation of cigarette butts and candy wrappers suggests that the area had not recently been cleaned." Herbert, 1995 WL 507289, at *1-*2. The court also noted that, "[e]ven if the puddle were the result of a recent spill, it seems unreasonable under these circumstances to require a long time to pass before defendant can be charged with constructive notice." Id. at *2.

Here, Plaintiff's allegations that the wet area was some four feet in diameter, and that the water in it was dirty, could support a reasonable jury finding that the wet condition had been in the lobby of 347 Madison Avenue long enough to impart constructive notice of the condition. Whether the MTA had actual or constructive notice of the hazardous wet condition

presents an issue of fact, and "[a]s with all factual issues under FELA, the right of the jury to pass on this issue must be liberally construed." Gallose, 878 F.2d at 85; see also O'Hara v. Long Island R.R. Co., 665 F.2d 8, 9 (2d Cir. 1981) ("[T]here is a strong federal policy in favor of letting juries decide FELA cases.").

The jury, as the finder of fact, could reasonably determine that the MTA breached its duty to provide a safe workplace by failing to take reasonable care, such as cleaning the floor regularly on that rainy morning or putting down a sufficient number of mats, to protect its employees from the slippery lobby floor. Whether the MTA had constructive notice of the hazardous condition and whether it took reasonable care to protect its employees from the condition present genuine issues of material fact. The evidentiary record on the issue of notice is not so thin as to preclude Plaintiff from meeting his burden. Accordingly, the MTA is not entitled to summary judgment on the basis of its notice argument.

*Agency*

The Defendant also contends that it cannot be held liable under the FELA because the cleaning crew in charge of lobby maintenance were not "agents" of the MTA within the meaning of the statute. See generally 42 U.S.C. § 51 (requiring negligence on part of the railroad's officer, employee, or agent in order to impute FELA liability upon the railroad). In Sinkler v. Missouri Pacific R.R. Co., a seminal case on FELA liability, the Supreme Court interpreted the term "agent" to include independent contractors performing, under contract, operational activities required to carry out the franchise of a railroad. 356 U.S. 326, 331-32 (1958); see also Fitzgerald v. A. L. Burbank & Co., 451 F.2d 670, 680 (2d Cir. 1971) ("The Supreme Court has held that an accommodating scope must be given to the term 'agent' and if

injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are agents of the employer within the meaning of . . . [the] FELA." (citation and quotation marks omitted)). The Sinkler Court found that an independently contracted switching crew was an "agent" of the railroad under the FELA because it performed a "vital operational activity of railroading." Sinkler, 356 U.S. at 331-32.

Courts have applied generous interpretations of Sinkler in determining what constitutes the "operational activities" of a railroad. Thomas v. Grigorescu, 582 F. Supp. 514, 517 (S.D.N.Y. 1984). The Fourth Circuit has upheld a jury verdict holding a railroad liable for the failure of an independently contracted janitorial staff to clean up a pat of butter in the cafeteria on which a railroad employee slipped and fell. Moore v. Chesapeake & Ohio Ry. Co., 649 F.2d 1004, 1007-08 (4th Cir. 1981). Courts have also found that a YMCA contracted to provide room and board for railroad employees, Carney v. Pittsburgh & Lake Erie R.R. Co., 316 F.2d 277, 282 (3d Cir. 1963), and doctors providing medical assistance to seamen, Fitzgerald, 451 F.2d at 680, were "agents" within the meaning of the FELA.[2]

Here, OneSource was an independent contractor performing, under contract, cleaning and janitorial services for the MTA. There is no indication that any party other than the MTA was ultimately responsible for maintaining the building. The existence of the agreement between the MTA and OneSource could support a finding that the MTA recognized its responsibility for maintaining its corporate headquarters, which it delegated to an outside service.

---

[2] Although Fitzgerald involved an action arising under the Jones Act, the holding is also applicable here because the Jones Act "in terms incorporates the provisions of the FELA." Kernan v. Am. Dredging Co., 355 U.S. 426, 431 (1958); Fitzgerald, 451 F.2d at 680; 46 App. U.S.C.A. 688 (West 2006).

See Thomas, 582 F. Supp. at 517 ("[A contract] is a critical feature of liability, for it is the contract which permits a finding that the negligent party was the 'agent' of the employer."). A reasonable jury could find that cleaning and maintaining its corporate headquarters was within the "operational activities" of the MTA, and, thus, cleaners were "agents" of the MTA under the FELA. Therefore, a genuine issue of material fact exists as to whether the cleaners were "agents" of the MTA such that their negligence can be imputed on to the Defendant. Because it cannot be said that no reasonable jury would find in favor of the Plaintiff, summary judgment is denied.

## CONCLUSION

Genuine issues of material fact remain as to whether the Defendant had actual or constructive notice of the wet condition causing the Plaintiff to slip and fall, and whether the independently contracted cleaners were "agents" performing the operational activities of the MTA. Accordingly, Defendant's motion for summary judgment is denied.

A Final Pre-Trial Conference is hereby scheduled in this matter for Friday, October 13, 2006, at 3:00 p.m. The parties shall confer and make their submissions in accordance with the Court's Pre-Trial Scheduling Order, dated September 23, 2004.

SO ORDERED.

Dated: New York, New York
August 4, 2006

LAURA TAYLOR SWAIN
United States District Judge